Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| YOMARIE LÓPEZ ALMODOVAR<br><br>Recurrida<br><br>v.<br><br>AUTOS DE SAN JUAN, INC.<br><br>Recurrente | KLRA202400632 | *Revisión* procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: CAG-2023-0005367<br><br>Sobre: Compra Venta de Vehículos de Motor |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de marzo de 2025.

Comparece Autos de San Juan, Inc. (en adelante, parte recurrente) mediante un *Recurso de Revisión Judicial,* para solicitarnos la revisión de la *Resolución* emitida el 7 de octubre de 2024, y notificada al día siguiente, por el Departamento de Asuntos del Consumidor (en adelante, DACo).[1] Mediante la *Resolución* recurrida, la aludida agencia declaró con lugar la *Querella* presentada por la señora Yomaris López Almodovar (en adelante, recurrida y/o López Almodovar). A esos efectos, ordenó a la parte recurrente a entregarle a la parte recurrida la cantidad de $15,975.00 dólares y a coordinar la entrega del vehículo de motor.

Por los fundamentos que expondremos, se *confirma* la *Resolución* recurrida.

I

Surge de los autos ante nuestra consideración que, el 31 de marzo de 2023, la parte recurrida celebró un contrato de compraventa con la parte recurrente, mediante el cual adquirió un

---

[1] Apéndice del recurso, a las págs. 1-9.

Número Identificador

SEN2025_____

vehículo de motor usado marca Toyota Corolla del año 2017, por el costo de $15,975.00 dólares.[2] A unos dos (2) meses de comprar el vehículo, entiéndase, el 19 de mayo de 2023, la parte recurrida acudió a la División de Vehículos Hurtados de la Policía de Puerto Rico (División de Vehículos Hurtados) para corroborar que el vehículo tuviese los sellos con el "vin number" del vehículo en las distintas piezas. Al examinar al vehículo, le informaron en la División de Vehículos Hurtados, que su auto no tenía los referidos sellos en: el bonete, el baúl, la tapa del lado izquierdo, el "cover" del bómper y el "flare".[3] Así, pues, la parte recurrida acudió ante la parte recurrente para que corrigiera la omisión de los aludidos sellos. Sin embargo, no fue hasta el 24 de mayo de 2023 que logró informar la situación al propietario del "dealer".[4] Según surge de la *Querella* presentada por la recurrida, esta, presuntamente, brindó seguimiento a la parte recurrente en múltiples ocasiones para que remendara la omisión de los sellos, pero no tuvo éxito. Ante la negativa de atender su reclamo, el 5 de julio de 2023, la parte recurrida presentó una *Querella* ante el DACo.[5] En el petitorio, solicitó que se le devolviera el dinero que pagó por el vehículo y que se le entregara otro vehículo que estuviera en cumplimiento con las exigencias legales.

Presentada la *Querella*, el DACo ordenó la inspección del vehículo de motor en cuestión, la cual fue ejecutada, el 10 de abril de 2024, por el Técnico de Investigación, Luis Vega Fernández. El informe de la referida inspección fue archivado en autos el 17 de junio de 2024.[6] En el mismo, el investigador indicó que observó lo siguiente:

---

[2] Apéndice del recurso, a la pág. 1.
[3] *Íd.*, a las págs. 2 y 13.
[4] *Íd.*, a la pág. 13.
[5] *Íd.*, a las págs. 12-15.
[6] *Íd.*, a las págs. 32-35.

1) Vehículo carece de chapas de serie en: Fascia Frontal, bonete, guardalodo delantero izquierdo, compuerta trasera y goma de bumper[7] trasero.[8]

Además, subrayó que las partes del título acordaron la corrección de lo identificado en la inspección, pero que no se fijó una fecha para ello.[9]

Subsiguientemente, el DACo citó a las aludidas partes a una vista administrativa, a celebrarse el 2 de octubre de 2024.[10] En la misma, se presentó el testimonio de López Almodóvar, la aquí recurrida, y se estipuló un documento intitulado Orden de Compra, marcado como Exhibit 1.[11] Celebrada la vista y evaluada la evidencia sometida, el DACo emitió la *Resolución* que nos ocupa.[12] Mediante el referido dictamen, la agencia declaró *Con Lugar* la *Querella* presentada por la recurrida. A esos efectos, realizó las siguientes determinaciones de hechos:

1. El Querellado es una Corporación con fines de lucro registrada en el Departamento de Estado de Puerto Rico, con n[ú]mero de registro 206334, dedicada a la compra y venta de vehículos de motor.

2. EI 31 de marzo de 2023[,] la Querellante adquirió mediante contrato de compraventa en el concesionario del Querellado un vehículo de motor usado marca Toyota, modelo Corolla IM, del año 2017, color blanco, tablilla IWN-125 (en adelante "el vehículo"), el cual tenía un costo de quince mil novecientos setenta y cinco dólares ($15,975.00).

3. La Querellante saldó la totalidad del vehículo, dando en cambio un vehículo de su propiedad marca Toyota, modelo Corolla, color gris, tablilla JFI-794 por el cual le acreditaron la cantidad de cinco mil quinientos dólares ($5,500.00) y el balance restante la pagó en efectivo.

4. El 19 de mayo de 2023[,] la Querellante se personó a la División de Vehículos Hurtados de la Policía de Puerto Rico, localizada en Santurce, para asegurarse que el vehículo que había adquirido estaba en cumplimiento con la ley.

---

[7] *Sic.*
[8] Apéndice del recurso, a la pág. 35.
[9] *Íd.*, a la pág. 35.
[10] La vista, inicialmente, fue pautada para el 4 de septiembre de 2024 y, luego, se transfirió para 2 de octubre de 2024. Véase en el Expediente administrativo Núm. CAG-2023-0005367 la *Orden* notificada el 3 de septiembre de 2024.
[11] Véase Transcripción de la Vista administrativa del DACo del 2 de octubre de 2024, a las págs. 5-6.
[12] Véase Expediente Administrativo Núm. CAG-2023-0005367.

5. Luego de inspeccionado el vehículo por el agente Mamero, placa. #21455, (en adelante "el agente") le informó a la Querellante, que el vehículo carecía de sellos "lables" con el "vin number" del vehículo, en distintas piezas a saber: compuerta trasera, bonete, fascia frontal, guardalado delantero izquierdo, goma de parachoques trasero y que[,] por lo tanto, su vehículo estaba en violación de ley.

6. Al momento de la compraventa el Querellado no le informó a la Querellante de la condición ilícita del vehículo, de carecer de los sellos que contienen el "vin number" en seis de sus piezas.

7. Al advenir en conocimiento de la condición ilícita del vehículo, la Querellante acudió de inmediato al concesionario del Querellado y le exigió al propietario, de nombre Michael, atender y corregir la situación.

8. El Querellado hizo caso omiso al reclamo de la Querellante, quien continuó con su reclamo en múltiples ocasiones, siendo desatendida por el Querellado.

9. Inconforme, e1 21 de septiembre de 2023, luego de cuatro meses de reclamos al Querellado sin que hiciera nada para corregir la falta de sellos en las referidas piezas del vehículo, la Querellante radicó una querella en este Departamento.

10. La Querellante alegó en su Querella incumplimiento de contrato, toda vez que, el Querellado le vendió un vehículo que no cumplía con los estatutos legales para transitar en las vías públicas del país, ocultándole la condición ilegal del vehículo y haciendo caso omiso a sus reclamos, solicitando como remedio la recisión del contrato, que el Querellado le cambie el vehículo por uno de igual calidad o en la alternativa la devolución del dinero pagado.

11. Una vez radicada la querella, el Departamento ordenó la inspección del vehículo, la cual se llevó a cabo el 10 de abril de 2024. La inspección fue realizada por Luis Vega. Fernández, Técnico de Investigación del Departamento (en adelante "el inspector").

12. El informe de inspección fue notificado a las partes el 17 de junio de 2024. Del informe de inspección surge lo siguiente.

13. Los hallazgos de la inspección realizada [el] 10 de abril de 2024 por el inspector, coincidieron con los hallazgos de la inspección realizada por el agente el 19 de mayo de 2023.

14. El Querellado luego de culminada la inspección, en la cual estuvo presente, acordó con la Querellante en realizar las gestiones para obtener los sellos faltantes de las piezas del vehículo y colocárselos.

15. Al presente el vehículo continuo sin los correspondientes sellos, en violación a la ley de tránsito de Puerto Rico, a pesar de las múltiples gestiones que ha realizado la Querellante con el Querellado para la obtención de estos y de las promesas incumplidas por parte del Querellado.[13]

En mérito de las antedichas determinaciones, la agencia concluyó que la parte recurrente le vendió a la parte recurrida un vehículo de motor que no estaba legalmente autorizado para transitar por las carreteras de Puerto Rico. Además, acentuó que la parte recurrida tuvo la oportunidad de corregir la omisión de los sellos por más de un año de instada la *Querella*, pero no lo hizo. Al amparo de lo anterior, el DACo ordenó a la parte recurrente a entregarle a la parte recurrida la suma que pagó en virtud de la compraventa celebrada entre las partes de $15,975.00 dólares, y a coordinar la entrega del vehículo de motor.

Inconforme con el curso decisorio, el 12 de noviembre de 2024, acudió ante nos la parte recurrente y alzó la comisión del siguiente error:

> ERRÓ EL DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR, YA QUE SU DETERMINACIÓN NO ESTÁ JUSTIFICADA POR UNA EVALUACIÓN JUSTA DEL PESO DE LA PRUEBA QUE TUVO ANTE SU CONSIDERACIÓN.

El mismo día en el cual se presentó el recurso del título, la parte recurrente presentó otras dos (2) mociones. La *primera,* intitulada *Moción en cumplimiento con la Regla 19 del Reglamento del Tribunal de Apelaciones*, en la cual informó que pretendía utilizar la Transcripción de la Prueba Oral como método de reproducción de la prueba oral; y, en la *segunda* moción*,* solicitó un término de veinte (20) días para presentar los apéndices del recurso ante nuestra consideración.

Examinadas ambas peticiones, mediante *Resolución*, emitida el 14 de noviembre de 2024, le concedimos un término adicional,

---

[13] Apéndice del recurso, a las págs. 1-3.

hasta el 2 de diciembre de 2024, para presentar el apéndice del recurso, y, hasta el 22 de noviembre de 2024, para acreditar haber notificado del presente recurso a la parte recurrida y para informar que contaba con la regrabación de los procedimientos o que había solicitado la misma. Por otro lado, le concedimos al DACo, también, hasta el 22 de noviembre de 2024, para presentar copia certificada del Expediente Administrativo Número CAG-2023-0005367, en forma digital "flash drive" (USB).

En cumplimiento con lo ordenado, el DACo, compareció, el 22 de noviembre de 2024, para presentar copia certificada del expediente administrativo. Subsiguientemente, el 25 de noviembre de 2024, mediante *Moción en cumplimiento de orden*, la parte recurrente acreditó haber notificado de este recurso a la recurrida. Por otro lado, la parte recurrente compareció, el 2 de diciembre de 2024, mediante *Moción sometiendo apéndices*. Subsiguientemente, el 17 de diciembre de 2024, la referida parte presentó la transcripción de la vista administrativa. Mediante *Resolución* del 9 de enero de 2025, puesto a que la parte recurrida no presentó objeción alguna sobre la transcripción de la prueba oral en el tiempo concedido por esta Curia, acogimos la misma como estipulada.

Habiendo decursado el término concedido a recurrida, procederemos a disponer del recurso sin el beneficio de su comparecencia.

II

**A. Revisión Judicial**

El Tribunal Supremo de Puerto Rico ha sostenido que el derecho a cuestionar la determinación de una agencia, mediante revisión judicial, es parte del debido proceso de ley protegido por la Constitución de Puerto Rico.[14] El Artículo 4.006 (c) de la Ley de la

---

[14] *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014); *Picorelli López v. Depto. de Hacienda,* 179 DPR 720, 736 (2010).

Judicatura del Estado Libre Asociado de Puerto Rico[15] otorga competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[16] La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme a la ley y de forma razonable.[17] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados, y si son compatibles con la política pública que las origina.[18] A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y (iii) la revisión completa y absoluta de las conclusiones de derecho.[19] Nuestro Alto Foro ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además, otorga a las personas, cuyos derechos pudieran quedar afectados, la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[20]

Dentro de este marco, los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[21] Igualmente, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no

---

[15] Ley Núm. 201-2003, 4 LPRA sec. 24y(c).

[16] *Asoc. Condómines v. Meadows Dev.*, supra, a la pág. 847.

[17] *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007).

[18] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).

[19] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010); *Mun. de. San Juan v. JCA*, 149 DPR 263, 279-280 (1999).

[20] *Asoc. Vec. Altamesa Este v. Municipio de San Juan*, 140 DPR 24, 34 (1996).

[21] *Rolón Martínez v. Supte. Policía*, supra, a la pág. 35.

deben alterar las determinaciones de las agencias.[22] En mérito de lo anterior, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[23] Ahora bien, lo anterior únicamente surtirá efecto si la decisión se basa en evidencia sustancial que obra en el expediente administrativo.[24] En cuanto a la evidencia sustancial, se ha definido como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[25] Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto aquella que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[26] Ello, implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[27] Además, la norma de prueba sustancial se sostiene en la premisa de que son las agencias las que producen y determinan los hechos en los procesos administrativos, y no los tribunales.[28]

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones.[29] Para ello, deberá demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su

---

[22] *Rolón Martínez v. Supte. Policía*, supra, a la pág. 35.

[23] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).

[24] *Otero v. Toyota*, 163 DPR 716, 727 (2005).

[25] *Batista, Nobbe v. Jta. Directores,* supra, a la pág. 216; *Otero v. Toyota*, supra, a la pág. 728.

[26] *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437 (1997).

[27] *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953).

[28] Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013.

[29] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 128 (2019); *González Segarra et al.  v. CFSE,* 188 DPR 252, 277 (2013); *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

consideración.[30] Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las determinaciones de hecho, y no sustituirá el criterio de la agencia por el suyo.[31] En cambio, las conclusiones de derecho son revisables en todos sus aspectos.[32] En esta tarea, los tribunales están compelidos a considerar la especialización y la experiencia de la agencia con respecto a las leyes y reglamentos que administra.[33] Así pues, si el fundamentos de derecho no conlleva interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable en toda su extensión.[34]

Sin embargo, aun cuando el Tribunal tiene facultad para revisar en todos sus aspectos las conclusiones de derecho de una agencia, se ha establecido que ello no implica que los tribunales revisores tienen la libertad absoluta para descartarlas libremente.[35] Si del análisis realizado se desprende que la interpretación que hace una agencia de su reglamento o de la ley que viene llamada a poner en vigor resulta razonable, el Tribunal debe abstenerse de intervenir.[36] Ahora bien, la deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones: (i) cuando la decisión no esté basada en evidencia sustancial; (ii) cuando la agencia haya errado en la aplicación de la ley; (iii) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y, (iv) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[37] Entiéndase que, aunque los tribunales están

---

[30] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[31] *Otero v. Toyota*, supra, a la pág. 728.
[32] *García Reyes v. Cruz Auto Corp.*, supra, a la pág. 894.
[33] *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75-76 (2000).
[34] *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997).
[35] *Federation Des Ind. v. Ebel*, 172 DPR 615, 648 (2007); *López Borges v. Adm. Corrección*, 185 DPR 603, 626 (2012).
[36] *Cruz v. Administración*, 164 DPR 341, 357 (2005).
[37] *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. A.R.Pe.*, supra.

llamados a conceder deferencia a las decisiones administrativas, tal norma no es absoluta. Ello, puesto a que no puede imprimírsele un sello de corrección automático, bajo el pretexto de deferencia, a determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a derecho.[38]

### B. Reglamento de Garantías de Vehículo de Motor

El Reglamento de Garantías de Vehículos de Motor (Reglamento 7159),[39] tiene como finalidad ser un mecanismo para: (i) proteger adecuadamente a los consumidores de Puerto Rico en la adquisición de vehículos de motor; (ii) asegurarles que su vehículo sirvan los propósitos para el cual fue adquirido, y que reúna las condiciones necesarias para garantizar al comprador la protección de su vida y propiedad, y, (iii) prevenir las prácticas ilícitas en las ventas de vehículos de motor.[40] Es al amparo de los enumerados objetivos que el DACo, al promulgar el aludido reglamento, esgrimió normas para garantizar la seguridad, salud y bienestar de los adquirientes de automóviles usados. A esos efectos, el Reglamento 7159 dispone, en su Regla 31, que estará prohibido vender un vehículo de motor usado que no "tenga el "vin number" en todas las piezas con respecto a aquellos modelos y marcas de vehículo de motor que designe de tiempo en tiempo el gobierno federal".[41] Conforme a la Ley de Vehículos y Transito de Puerto Rico, las siglas VIN se refiere al número de identificación del vehículo "asignado por el fabricante o el manufacturero y utilizado por el Departamento, para la identificación exclusiva del vehículo de motor [. . .]".[42] La prohibición establecida en la Regla 31 del reglamento que nos ocupa es cónsona con el Artículo 20 de la Ley para la Protección de la

---

[38] *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 2024 TSPR 29, 213 DPR __ (2024).
[39] Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 7159 del 1 de junio de 2006.
[40] *Polanco v. Cacique Motors*, 165 DPR 156, 163-164 (2005).
[41] Reglamento Núm. 7159, *supra*, R. 31 (b).
[42] Ley 22-2000, Art. 1.69, 9 LPRA sec. 5001(66).

Propiedad Vehicular,[43] el cual estable que incurre en delito grave de cuarto grado cualquier persona que "voluntariamente borre, mutile, cubra, altere, destruya, remueva, desprenda o en alguna forma modifique los números de motor o serie o cualquier otro número de identificación impreso por el manufacturero o fabricante o asignado por el Secretario de Transportación y Obras Públicas de un vehículo de motor". Entiéndase que, un vehículo que no contenga los "vin numbers" en todas las piezas que así lo requieran no está autorizado para transitar por las vías públicas de Puerto Rico.[44]

Por otra parte, y en lo pertinente al caso de autos, huelga subrayar que el Reglamento 7159 no impide que para vindicar los derechos protegidos por el mismo el consumidor ejerza las acciones de saneamiento por evicción, vicios ocultos o redhibitorios, y cualquiera otra que reconozca el Código Civil de Puerto Rico.

III

En el recurso de revisión judicial ante nuestra consideración, la parte recurrente plantea que la determinación del DACo no está sustentada en una evaluación justa del peso de la prueba que tuvo ante su consideración.

Conforme reseñamos en nuestra previa exposición doctrinal, esta Curia debe de ordinario presumir que la decisión de una agencia administrativa es correcta. En consecuencia, quien alegue ausencia de prueba sustancial debe presentar evidencia suficiente para derrotar la presunción, por lo que no puede descansar en meras alegaciones.[45] Así, pues, la parte quien solicita la revisión de la determinación emitida por la agencia debe presentar evidencia que sea capaz restarle valor a la prueba impugnada, de forma que este tribunal no pueda concluir que el dictamen emitido por la

---

[43] Ley Núm. 8 de 5 de agosto de 1987, Art. 20, 9 LPRA sec. 3220.
[44] Véase Ley Núm. 8, *supra*, Art. 7, 9 LPRA sec. 3206.
[45] *OEG v. Martínez Giraud*, supra, a la pág. 89; *Graciani Rodríguez v. Garage Isla* supra, a la pág. 128; *González Segarra et al. v. CFSE*, supra, a la pág. 277; *Pacheco v. Estancias*, supra, a la pág. 431.

agencia fue razonable.[46] De no presentarse la referida evidencia, el dictamen de la agencia debe de respetarse.[47] Ello, así, puesto a que la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG) dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo".[48]

Según subrayamos previamente, la evidencia sustancial, se ha definido como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[49] Para determinar lo anterior, será necesario que la evidencia sea considerada en su totalidad, esto es, tanto aquella que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[50] Por otra parte, es menester reseñar que en nuestra ordenamiento jurídico son las agencias las que producen y determinan los hechos en los procesos administrativos, y no los tribunales.[51] Es por eso, que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[52]

En el caso de marras, la aquí recurrida presentó una *Querella* ante el DACo en la que alegó, en síntesis, que, luego de comprarle un vehículo de motor usado a la parte recurrida, descubrió, al acudir a la División de Vehículos Hurtados, que este no contenía los sellos con el "vin number" en varias de las piezas, en contravención con las exigencias legales. A tenor, el DACo ordenó a inspeccionar el vehículo para corroborar la alegación. Del informe de la referida

---

[46] *Gutiérrez Vázquez v. Hernández y otros*, supra, a la pág. 244.
[47] *Otero v. Toyota*, supra, a la pág. 728.
[48] Ley 38-2017, 3 LPRA sec. 9675.
[49] *Batista, Nobbe v. Jta. Directores*, supra, a la pág. 216; *Otero v. Toyota*, supra, a la pág. 728.
[50] *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, supra, a la pág. 437.
[51] *Fernández Quiñones, Op. Cit.*, supra.
[52] *Hilton v. Junta de Salario Mínimo*, supra, a la pág. 687.

investigación, surge que, en efecto, el vehículo de la recurrida no contenía los referidos sellos en la fascia frontal, el bonete, el guardalodo delantero izquierdo, la compuerta trasera y la goma del bómper trasero.[53] De ahí, el DACo celebró una vista administrativa, en la cual, únicamente, se presentó el testimonio de la aquí recurrida y se estipuló un documento intitulado Orden de Compra, marcado como Exhibit 1. En su testimonio, la recurrida reiteró lo alegado en su *Querella*. Además, acentuó que intentó comunicarse con la parte recurrente en varias ocasiones para resolver la cuestión de los sellos, pero no tuvo éxito.[54] Evaluado lo anterior, el DACo emitió la *Resolución* recurrida, mediante la cual declaró *Con Lugar* la *Querella* presentada por la recurrida. En consecuencia, ordenó a la parte recurrente a entregarle la suma que pagó en virtud de la compraventa celebrada entre las partes, de $15,975.00 dólares, y a coordinar la entrega del vehículo de motor.

En su alegato, la parte recurrente plantea que la *Resolución* del DACo no estaba sostenida en evidencia sustancial que obra en el expediente, puesto a que, presuntamente, con anterioridad a la vista administrativa, las partes del título llegaron a un acuerdo transaccional para reasignarle los sellos a las piezas del vehículo que no contenían el "vin number".[55] Del Informe de Inspección del DACo surge que las referidas partes acordaron remendar la omisión de los sellos en la piezas identificadas en la inspección. Ahora bien, el inspector reseñó que no se había fijado una fecha para ello.[56] Por otra parte, de la Transcripción de la vista surge que la parte recurrente trajo ante el Oficial Examinador el argumento de que las partes habían acordado remediar la cuestión de los sellos extrajudicialmente. Sin embargo, el Oficial Examinar subrayó que

---

[53] Apéndice del recurso, a la pág. 35.
[54] Véase Transcripción de la Vista administrativa del DACo del 2 de octubre de 2024, a las págs. 6-12.
[55] Alegato de la parte recurrente, a la pág. 6.
[56] Apéndice del recurso, a la pág. 35.

la recurrida no estaba conforme con ese acuerdo y por ello se celebró la vista administrativa.[57] Al final de la vista, las partes del título expresaron que, de tener un acuerdo transaccional antes de treinta (30) días, podrían estipularlo.[58] No obstante, no surge de los autos ante nuestra consideración, ni del expediente administrativo, que las mencionadas partes llegaron a un acuerdo transaccional.

Previamente reseñamos que, quien alegue que la determinación de una agencia no se basó en evidencia sustancial, debe presentar otra prueba que le reste valor a la impugnada. El hecho de que las partes auscultaron un posible acuerdo transaccional el cual nunca se concretó no derrota el hecho de que el vehículo de motor de la recurrida carecía, en varias piezas, de los sellos con el "vin number" requeridos por la ley. Además, huelga destacar que, durante la vista, la recurrida expresó que había pasado un (1) año desde que inició intentos para que la parte recurrente le resolviera la situación de los sellos y nada había pasado.[59] Sabido es que conforme al Reglamento 7159, está prohibido vender un vehículo de motor usado que no tenga el "vin number" en todas las piezas.[60] A esos efectos, justipreciamos que, luego de evidenciar que el vehículo adquirido por la recurrida carecía de los sellos exigidos, y ante la constante negativa de la parte recurrente de remediar la situación, el DACo no tenía otra opción que declarar *Con Lugar* la *Querella* presentada por la recurrida y otorgarle el remedio correspondiente. Más aun cuando de los autos no surgía otra prueba que arrojara duda sobre lo probado en cuanto a la omisión de los referidos sellos.

De otra parte, puntualizamos que, en su alegato, la parte recurrente informó que, luego de presentado este recurso, el

---

[57] Véase Transcripción de la Vista administrativa del DACo del 2 de octubre de 2024, a la pág. 14, en las lins. 21-23.
[58] *Íd.,* a la pág. 15, en las lins. 14-16.
[59] *Íd.,* a la pág. 12, en las lins. 8-11.
[60] Reglamento Núm. 7159, *supra*, R. 31 (b).

vehículo objeto de este caso fue pérdida total debido a un accidente automovilístico. De manera que el remedio otorgado por el DACo en la resolución que nos ocupa no podía llevarse a cabo.[61] Es norma harta conocida que "este Tribunal no conocerá ni resolverá ninguna cuestión que no haya sido planteada o resuelta por el tribunal o agencia administrativa de cuya sentencia o resolución se ha apelado".[62] Así, pues, lo alegado por la parte recurrente, en nada incide sobre la disposición de este recurso.

En mérito de todo lo antes expuesto, concluimos que el error esgrimido por la parte recurrente no se cometió, por lo que procede confirmar la *Resolución* recurrida.

IV

Por los fundamentos que anteceden, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[61] Alegato de la parte recurrente, a la pág. 7. Puntualizamos que la conclusión arribada por este Panel no impide a la parte recurrente reclamar por la vía legal cualquier derecho de compensación que pueda tener.
[62] *Autoridad Sobre Hogares v. Sagastivelza*, 71 DPR 436, 439 (1950)